**Stanley GAWREYS, Plaintiff,**

v.

**D. C. GENERAL ·HOSPITAL et al., Defendants.**

Civ. A. No. 78–1645.

United States District Court, District of Columbia.

Nov. 30, 1979.

Allan Gates, III, Washington, D. C., for plaintiff.

William J. Earl, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., for defendants.

MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Cross Motions for Partial Summary Judgment in an action brought by Stanley Gawreys against D.C. General Hospital (DCGH), *et al.* Plaintiff is requesting relief and damages arising from alleged violations of his Fifth Amendment and Eight Amendment Constitutional rights. Jurisdiction is premised upon 28 U.S.C. § 1331.

The undisputed facts (for the purpose of partial summary judgment) may be summarized as follows:

Plaintiff was arrested on October 21, 1977. Two days later he was taken to DCGH, complaining of illness. Gawreys was diagnosed as suffering from acute endocarditis, a high temperature, and diarrhea. When admitted to DCGH, Plaintiff was put in "deadlock," a patient's personal room that locked from the outside. After Plaintiff verbally threatened the nursing staff and tampered with his intravenous device, he was restrained to his bed with metal handcuffs and leg irons. Plaintiff

remained confined in deadlock and so restrained for between four and five days. Normally, prisoner-patients are kept unrestrained in the "lockward," a large ward capable of holding 16 patients that locks from the outside. Prisoner-patients are normally subjected to deadlock or restraints if such action is either medically necessary or essential for the protection of patients or hospital employees.

The only relevant written indicia of policy regarding the use of restraints states that

> Medical restraints (cloth or leather) may be ordered by the inmate patient's physician provided the order is renewed every twenty-four (24) hours. A log of all inmate patients restrained for medical reasons will be maintained by the officer on duty. Restraints required for the movement of inmate patients from one area to another will be governed by Department of Corrections regulations. If in the interest of security Department of Corrections personnel require an inmate patient to be restrained to his bed, the key to said restraints will be in the possession of the correctional officer at the patient's bedside for use in a medical emergency.[1]

There is no written statement indicating policy regarding the use of deadlock.

It is clear that a valid criminal conviction constitutionally deprives an individual of liberty.[2] While a convicted criminal retains at least a modicum of his Due Process liberty interest,[3] "the State may confine him and subject him to the rules of the prison system so long as the conditions of confinement do not otherwise violate the Constitution."[4] Pretrial detainees are also constitutionally deprived of their liberty interest, so long as the State's treatment of the detainee does not reflect an intent to punish.[5] If there is a "legitimate nonpunitive governmental objective"[6] underlying the Government's treatment of the pretrial detainee, the treatment is constitutional. The Government's objectives must be scrutinized in view of the two sources of a prisoner's Due Process rights, state law[7] and the Eighth Amendment.[8]

It is clear that if state law creates a liberty interest, the state may not arbitrarily withdraw that interest.[9] The procedures for withdrawing a state created liberty interest may be delineated in the law itself; if no procedures are outlined, the Due Process clause may require a hearing or other appropriate measures.[10]

The Eighth Amendment prohibition against cruel and unusual punishment requires that "the Government . . . provide medical care for those whom it is punishing by incarceration."[11] It also proscribes penalties that "transgress today's broad and ideal concepts of dignity . . . humanity and decency."[12] It is clear that pretrial detainees are entitled to "at least those constitutional rights . . . enjoyed by convicted criminals."[13] Thus, pretrial detainees are constitutionally entitled to medical care and humane treatment.

---

1. DCGH Regulations 300–1.

2. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1975).

3. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

4. *Meachum v. Fano, supra*, 427 U.S. at 224, 96 S.Ct. at 2538.

5. *Bell v. Wolfish*, 441 U.S. 520 at 535–541, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

6. *Id.*, at 539, 99 S.Ct. 1861.

7. *See Meachum v. Fano, supra*, 427 U.S. at 224, 96 S.Ct. 2532; *Wolff v. McDonnell, supra*, 418 U.S. at 558, 94 S.Ct. 2963.

8. *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

9. *Wolff v. McDonnell, supra*, 418 U.S. at 557–559, 94 S.Ct. 2963.

10. *Id.*

11. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

12. *Id.* at 102, 97 S.Ct. at 290; *Hutto v. Finney, supra*, 437 U.S. at 685, 98 S.Ct. 2565.

13. *Bell v. Wolfish, supra*, 441 U.S. at 545, 99 S.Ct. 1861.

In *Cambell v. Magruder*[14] the Court was asked to alleviate existing problems in the District of Columbia Jail that violated the constitutional rights of pretrial detainees. The illegal use of restraints was one of the violations alleged by the detainees and found by the Court. To guarantee that the violations did not persist, the Court

Establish[ed] the following procedures governing the use of restraints:

a) inmates requiring restraints will be housed in a hospital setting, and not with the general population;

b) unpadded handcuffs and leg irons shall not be used under any circumstances. Medically appropriate restraints, padded or pliable to prevent injury to the inmate, may be utilized;

c) restraints may be imposed only upon the specific written authorization of a medical doctor;

d) if required in an emergency situation when a doctor is present [sic], a Medical Technical Assistant (MTA) or Registered Nurse may order the temporary use of restraints, subject to the receipt, by telephone or otherwise, of approval from a medical doctor within two (2) hours of the imposition of such restraints;

e) a log will be kept reflecting the use of restraints and stating for each use the name of the person restrained, the date and time he was placed on restraints, the name of the doctor approving the use of restraints, and the time of such approval;

f) orders by a doctor authorizing the use of restraints are valid for twenty-four (24) hours only, and if no further written order has been entered within that period, the inmate shall be released from restraints;

g) no restrained inmate shall be housed in such a manner as to permit access to him by non-restrained inmates, with the exception of inmates approved by the medical staff for employment in the hospital area.[15]

■ The unconstitutional use of restraints is readily apparent in the instant case. Defendants have not produced a scintilla of evidence indicating that metal restraints are in any way superior to ordinary hospital restraints. Metal restraints are medically inferior, provide no greater security, and are more expensive than medical restraints. The only possible reason to use metal restraints is to punish the patient. Because Plaintiff was a pretrial detainee, punishment is not a legitimate governmental objective. The use of metal restraints thus violated his Fifth Amendment Due Process rights.[16] Furthermore, the hospital regulations provide the inmate-patient with a due process liberty interest. There was no legitimate governmental objective served by the arbitrary withdrawal of that interest.[17] The regulations permit the use of medically acceptable restraints only. The use of metal restraints was also unconstitutional for this reason.

■ Neither the use of medical restraints or deadlock at DCGH is *per se* unconstitutional however. Inmates are brought to DCGH when they are seriously ill, and prison medical facilities are inadequate. The Government has an interest in the welfare of all inmates brought to the hospital. While the use of restraints and isolation in prison is solely punitive and may be restricted by the Courts,[18] there are a variety of medical reasons requiring their use at DCGH. It would be appropriate to use deadlock, for example, if the lockward was full, if it was feared that the inmate-patient had a contagious disease, if the patient's behavior would deleteriously affect the welfare of other patients, or if the use of restraints was necessary. Restraints would

14. 416 F.Supp. 100 (D.D.C.1975), *aff'd in part*, 188 U.S.App.D.C. 258, 288, 580 F.2d 521, 551 (D.C. Cir. 1978).

15. *Id.* at 106.

16. *See Bell v. Wolfish, supra*, 441 U.S. at 535–541, 99 S.Ct. 1861.

17. *See Wolff v. McDonald, supra*, 418 U.S. at 558, 94 S.Ct. 2963; *Meachum v. Fano, supra*, 427 U.S. at 224, 96 S.Ct. 2532.

18. *Hutto v. Finney, supra*, 437 U.S. at 685, 98 S.Ct. 2565.

**856**

be appropriately employed if necessary for the treatment of the patient, or if necessary to prevent the inmate from hurting himself or the medical staff.

While deadlock and ordinary medical restraints may be validly employed, they are also susceptible to impermissible use. Plaintiff asks this Court to require detailed regulations governing the utilization of deadlock and restraints hoping that this will somewhat mitigate the possibility of abuse. Plaintiff recognizes, however, that the problems inherent in administering medical treatment to inmates are not "susceptible of easy solutions."[19] In such situations, administrators should be given "wide-ranging deference in the adoption and execution of policies and practices . . ."[20] Rather than impose regulations on hospital authorities, this Court is of the opinion that the procedures Ordered in *Cambell v. Magruder* are sufficient to attenuate the probability of abuse.

Accordingly, it is by the Court this 30th day of November, 1979,

DECLARED, that the use of metal handcuffs and leg irons in the District of Columbia General Hospital for any purpose other than transporting a prisoner to or from the Hospital is unconstitutional; and it is

ORDERED, that only medically appropriate restraints shall be employed by DCGH personnel to restrain inmate-patients; and it is

FURTHER ORDERED, that restraints shall only be utilized for appropriate medical purposes; and it is

FURTHER ORDERED, that the procedures established by the Court in *Cambell v. Magruder* and cited on page four (4) of this Memorandum Opinion and Order shall be followed by Defendant whenever restraints or deadlock are employed; and it is

FURTHER ORDERED, that Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED, and it is

FURTHER ORDERED, that Defendants' Motion for Partial Summary Judgment is hereby DENIED.

---

**19.** *Bell v. Wolfish, supra,* 441 U.S. at 547, 99 S.Ct. 1861.

